**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

PROGRESSIVE CASUALTY
INSURANCE COMPANY,

        **Plaintiff,**

v.

THE ESTATE OF RANDY FRANKLIN
HAMMONDS, DECEASED,
CATHERINE NEWELL, AUSTIN
MICHAEL MEYER, MEYER AAA
HAULING, LLC, MEYER
CONTRACTING AND HAULING LLC,
and EZ PORTABLE BUILDINGS, INC.,

        **Defendants.**

**Case No. 3:24-CV-02091-NJR**

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

This case grows out of a multi-vehicle highway accident in Alexander County, Illinois, on June 20, 2022. Defendant Austin Michael Meyer was operating a 2007 Peterbilt truck on Illinois Route 3. (Doc. 64-4, pp. 3-5). As Meyer attempted to pass a car in front of him, he allegedly set in motion a series of events that resulted in a head-on collision between Catherine Newell and Randy Hammonds, the occupants of two other vehicles. Hammonds died from his injuries.

Subsequently, Hammonds' estate sued Meyer, Newell, and several other defendants — Meyer AAA Hauling, LLC, Meyer Contracting & Hauling LLC, and EZ Portable Buildings, Inc. — in Alexander County, Illinois Circuit Court. (Doc. 66, ¶ 4; Doc. 68, ¶ 4; Case No. 2022LA3). Newell filed a counterclaim against all of the defendants

except the estate. (*Id.*).

On August 30, 2024, Progressive filed a Complaint for Declaratory Judgment in this district court against all of the parties to the state court lawsuit, seeking a declaration that it does not owe a duty to defend or indemnify any party with respect to insurance policy 02004736. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff Progressive is an Ohio corporation with its principal place of business in Ohio; Defendant Meyer is a citizen of Missouri; Defendants Meyer AAA Hauling, LLC and Meyer Contracting and Hauling, LLC are a single-member LLCs owned by a citizen of Missouri; EZ Portable Buildings, Inc. is a Kentucky corporation with its principal place of business in Kentucky; Newell is an Illinois citizen; and the amount in controversy exceeds $75,000, exclusive of interest and costs. (Doc. 1).

**The Insurance Policy**

This case concerns a commercial auto insurance policy (Policy No. 02004736) issued by Progressive to Meyer Contracting and Hauling LLC. (Doc. 64-1). The policy was effective from April 16, 2022, to April 16, 2023. Several provisions are relevant here. First, the policy states:

> Subject to the General Definitions, to all the terms, conditions, and limitations of the Duties In The Event of an Accident or Loss section, to all the terms, conditions, and limitations of the General Provisions, and to all the terms, conditions, exclusions, limitations, and applicable reductions described in this Part I, if **you** pay the premium for this coverage and coverage under this Part I applies, **we** will pay damages for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident.**
>
> **We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or

make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

(Doc. 64-1, p. 19).

The policy goes on to define "insured" as follows:

> A. When used in Part I-Liability to Others, **insured** means:
> 1. **You** with respect to an **insured auto**.
> 2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:
> [ . . .]
> 3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I-Liability to Others.

(*Id.* at pp. 19-20).

The policy contains two definitions of "insured auto." The first provides:

> 6. "**Insured auto**" or "**your insured auto**" means:
> a. Any **auto** specifically described on the **declarations page**; or
> b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
> > (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
> > (ii) **we** insure all a**utos** owned by **you** that are used in **your** business;
> > (iii) no other insurance policy provides coverage for that **auto**; and
> > (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.
> . . .
> c. Any replacement **auto** on the date you become the owner if:
> > (i) **you** acquire the auto during the policy period shown on the **declarations page**;
> > (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or loss to the replaced **auto** that renders it permanently inoperable; and
> > (iii) no other insurance policy provides coverage for that **auto**.

(*Id.* at pp. 15-16).

The second definition provides:

> B. When used in Part I-Liability to Others, **insured auto** also includes:
>       1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
>       2. Mobile equipment while being carried or towed by an insured auto;
>       3. Any **temporary substitute auto**
>       4. [further defining covered mobile equipment]

(*Id.* at p. 20).

"Temporary substitute auto" is defined as:

> [A]ny **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you, a relative, or your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

(*Id.* at p. 19).

**Procedural History**

After Progressive filed its complaint for declaratory judgment in this Court and served all of the defendants, only two — Hammonds' estate and Newell — appeared and answered. (Docs. 4, 8). At Progressive's request, the Clerk of Court entered default against the other defendants on February 20, 2025. (Doc. 46). Progressive then moved for a default judgment against those defendants. (Doc. 47). On June 23, 2025, the Court granted the motion in part, finding that Progressive does not have duty to defend those defendants in the underlying state court lawsuit under the policy. (Doc. 55). However,

the Court declined to decide whether Progressive had a duty to indemnify under the policy while discovery in this case and in the state action proceeded. (*Id.*).

On October 23, 2025, Progressive moved for summary judgment on its claim that it has no duty to defend or indemnify any defendant under the policy. (Doc. 63). Newell and Hammonds' estate indicate that they take no position on Progressive's motion. (Docs. 67, 69).

**Undisputed Facts**

The following facts are undisputed. Meyer AAA Hauling, LLC, is a single member Limited Liability Company owned by Zach Meyer. (Docs. 66, 68). Meyer Contracting and Hauling LLC is a single-member Limited Liability Company owned by Zach Meyer. (*Id.*). Meyer Contracting and Hauling LLC is the named insured on Progressive Policy at issue here (No. 02004736), which was effective from April 16, 2022 to April 16, 2023. (*Id.*).

At the time of the collision giving rise to the underlying lawsuit in state court, Austin Michael Meyer was driving a 2007 Peterbilt 379 with VIN 1XP5AU7X17D744284. (*Id.*). Austin Michael Meyer was pulling a trailer that belonged to Meyer Contracting and Hauling LLC. (*Id.*). The 2007 Peterbilt was insured under a separate Progressive insurance policy, Policy No. 953156774. (*Id.*). That truck was purchased by Meyer Contracting and Hauling LLC on April 12, 2022, but was leased to Meyer AAA Hauling, LLC two days prior. (*Id.*). Meyer Contracting and Hauling LLC purchased the trailer in July 2021. (*Id.*). The Auto Coverage Schedule for the Progressive Policy at issue here (No. 02004736) lists a 2009 International 440, a 2015 Ford F550 and a 2022 Ford F150 but does not list the 2007 Peterbilt nor any trailer. (*Id.*; *see also* Doc. 64-1, pp. 3-4). On the date of the collision, none

of the listed vehicles were out of service. (Docs. 66, 68).

## LEGAL STANDARDS

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Assertions that a fact cannot be or is genuinely disputed must be supported by materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). The Court may not "assess the credibility of witnesses or balance the relative weight of conflicting evidence." *Palmer v. Franz*, 928 F.3d 560, 565 (7th Cir. 2019) (alteration omitted) (quoting *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010)). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920.

Because the summary judgment motion here is brought against all defendants, several of whom remain in default, the Court will treat it as a renewed motion for default

judgment as to those defendants. Rule 55(a) requires the clerk to enter default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise. Fed. R. Civ. P. 55(a). The clerk's entry of a default "is merely a formal matter and does not constitute entry of a judgment." 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (4th ed.). "Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)). "When ruling on a motion for default judgment, the Court "must accept as true all factual allegations in the complaint, except those regarding the amount of damages." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *See* 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2688.1 (4th ed.).

**DISCUSSION**

Progressive argues that the undisputed facts make clear that it has no duty to any defendant under Policy Number 02004736. The Court agrees.

Start with some first principles. Insurance policies are contracts and therefore are construed using ordinary principles of contract interpretation. *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005); *see also Old Guard Ins. Co. v. Riverway Prop. Mgmt., LLC*, No. 23-01098, 2024 WL 4112781, at *4 (C.D. Ill. Sept. 6, 2024).

A court's "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Hobbs*, 214 Ill. 2d at 17, 823 N.E.2d at 564 (citing *American States Ins. Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997)).

Illinois law provides that "the insurer's duty to defend arises when 'the facts alleged in the underlying complaint fall within, or potentially within, the policy's provisions.'" *Berkley Ins. Co. v. Caraway*, No. 24-256, 2025 WL 3280220, at *5 (S.D. Ill. Nov. 25, 2025) (quoting *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 951–52 (7th Cir. 2020)). An insurer's duty to defend is broader than its duty to indemnify. *See Bartkowiak v. Underwriters at Lloyd's, London*, 2015 IL App (1st) 133549, ¶ 20, 39 N.E.3d 176, 181 (Ill. App. Ct. 2015). For that reason, the duty "arises not just when the allegations of the underlying complaint "'fall within . . . the policy's coverage,' but also when those allegations 'potentially' fall within that coverage." *Great Am. Ins. Co. v. State Farm Fire & Cas. Co.*, 104 F.4th 1011, 1018 (7th Cir. 2024) (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108, 607 N.E.2d 1204, 1212 (1992)). In assessing whether an insurer has a duty to defend in a particular case, courts may assess matters outside of the allegations in the underlying complaint and the insurance policy provided that doing so would not trench upon key issues in the other litigation, such as a plaintiff's theory of liability. *See Pekin Ins. Co. v. St. Paul Lutheran Church*, 2016 IL App (4th) 150966, ¶ 64, 78 N.E.3d 941, 951 (Ill. App. Ct. 2016). Provisions in insurance policies that limit coverage are to be "interpreted liberally in favor of the insured and against the insurer." *Koloms*, 177 Ill. 2d at 479, 687 N.E.2d at 75.

Progressive argues that no defendant is entitled to coverage because none of the

defendants are an "insured" within the meaning of the policy. (Doc. 64-1, p. 19). The

policy defines "insured" as:

> 1. **You** with respect to an **insured auto**.
> 2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except: [ . . .]
> 3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I-Liability to Others.

(*Id.* at pp. 19-20).[1]

To satisfy any of the definitions, the vehicle involved in the incident must be an

"insured auto." The first and second subsections mention "insured auto" directly. The

third subsection is less obvious; it adds to the definition of "insured" other persons but

"only with respect to" the liability of that person "for acts or omissions" of someone who

is "otherwise covered under" the policy — i.e., those who are vicariously liable for

someone who is an insured under the first or second definitions. Consequently, the

question becomes whether the truck and trailer at issue in the underlying state case

qualify as an "insured auto" under the policy.

Consolidating all of the policy's definitions, an "insured auto" is defined in five

ways: (1) vehicles listed on the policy's declarations page (*Id.* at p. 15); (2) certain

additional vehicles provided the insured acquires the vehicle during the policy period,

Progressive insures all vehicles used in the insured's business, no other policy provides

coverage, and the insured requests coverage within 30 days (*Id.* at pp. 15-16); (3) vehicles

---

[1] "You" and "your" are defined by reference to the individual named on the policy's declarations page. (Doc. 64-1, p. 19). In this case, that is Meyer Contracting and Hauling, LLC. (*Id.* at p. 2).

acquired during the policy period to replace one of the vehicles listed on the declarations page; (4) trailers while connected to insured autos (*Id.* at p. 20); (5) and "temporary substitute autos" (*Id.*). A temporary substitute auto is defined to include only vehicles the insured "do[es] not own while used with the permission of its owner as a temporary substitute for an insured auto that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction." (*Id.* at p. 19).

The undisputed facts regarding the vehicle and trailer involved in the collision make clear that neither is an "insured auto." The collision involved a 2007 Peterbilt truck. That vehicle is not listed on the declarations page. Accordingly, it is not covered under the first definition. Next, the Peterbilt truck is not an additional auto under the second definition because it was purchased on April 12, 2022, outside the policy period and was covered by another insurance policy. For similar reasons, neither the truck nor the trailer, which was purchased in 2021, qualify as replacement autos. Neither the truck nor the trailer was a "temporary substitute auto" because both were owned by Meyer Contracting and Hauling LLC, which is the name of the insured on the policy, and none of the vehicles listed on the declarations page were out of service on the date of the crash. Finally, the trailer was not attached to an insured auto, as defined by any of the provisions discussed above.

Because neither the truck nor the attached trailer qualifies as an "insured auto" under the policy, it follows that no entity potentially seeking coverage qualifies as an "insured" under the policy's liability coverage provisions. (Doc. 64-1, pp. 19-2). Thus, the policy at issue here (No. 02004736) does not extend coverage to any of the defendants.

The only parties to appear in this case — Hammonds' estate and Newell — offer no argument to the contrary and indeed, do not oppose summary judgment.[2]

### CONCLUSION

Accordingly, it is **ORDERED** that Progressive's Motion for Summary Judgment (Doc. 63) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment as follows:

> Progressive Casualty Insurance Company owes no duty to defend or indemnify the Estate of Randy Frankin Hammonds, Catherine Newell, Austin Michael Meyer, Meyer AAA Hauling, LLC, Meyer Contracting and Hauling LLC, or EZ Portable Buildings, Inc., under Policy No. 02004736 with respect to the underlying litigation, styled *Hammonds, Jr. v. Michael Austin Meyer, et al*, Case No. 2022-LA-3, pending in the First Judicial Circuit Court in Alexander County, Illinois.

It is further **ORDERED** that the Clerk of Court shall **CLOSE** this case upon entry of the judgment.

**IT IS SO ORDERED.**

**DATED:   March 23, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[2] It is true that the underlying litigation remains pending in state court, and the Seventh Circuit regularly has held that "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (collecting cases). But because in Illinois, the duty to defend is broader than the duty to indemnify, the Court's finding that there is no duty to defend necessarily precludes a finding of a duty to indemnify, and summary judgment on that issue therefore is appropriate. *See Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 693 (7th Cir. 2009); *IMEG Corp. v. Atl. Specialty Ins. Co.*, No. 20-03316, 2025 WL 962961, at *13 (N.D. Ill. Mar. 31, 2025).